UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FERNANDO FIGUEROA-BARAJAS, ) <br> ) <br>    *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> GEORGE H. LUND, III, JOHN DOE U.S. ) <br> Immigration and Customs Enforcement ) <br> Agents 1-3, and JOHN ROE U.S. ) <br> Immigration and Customs Enforcement ) <br> Assistant Field Office Directors 1-2, ) <br> ) <br>    *Defendants.* ) | CIVIL ACTION <br><br> CASE NO. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

1. This a civil rights action against federal immigration officials pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 401 U.S. 388 (1971).

2. Following his arrest by local police in Mississippi for a traffic violation in September 2013, agents of U.S. Immigration and Customs Enforcement (ICE) detained Plaintiff Fernando Figueroa-Barajas ("Plaintiff") and beat him so badly that he required multiple trips to the hospital. When Plaintiff protested his treatment and attempted to seek accountability, ICE officials falsely labeled him as "suicidal" and banished him to solitary confinement for five straight months.

3. Plaintiff now brings this action for declaratory relief and damages for the First, Fourth and Fifth Amendment violations committed against him through a coercive custodial interrogation, brutal beating, subsequent malicious denial of necessary medical treatment, and failure to intervene perpetrated by Defendants, John Doe U.S. Immigration and Customs

1

Enforcement ("ICE") 1-3. Moreover, he seeks accountability in the form of compensation for his five-month detention in solitary confinement without legal justification as a result of the unconstitutional acts and omissions of Defendant Lund, the former ICE New Orleans Field Office Director for Enforcement and Removal Operations (ERO), and Defendant Roes 1-2, Assistant Field Office Directors in the ICE ERO New Orleans Field Office.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(A) because, on information and belief, one or more of the federal Defendant officers or employees reside in this District, and pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the acts and occurrences giving rise to Plaintiff's claims occurred within this judicial District.

## PARTIES

6. Plaintiff Fernando Figueroa-Barajas is a twenty-one year-old native of Mexico. He is currently a civil detainee in the custody of U.S. Immigration and Customs Enforcement at the LaSalle Detention Facility in Jena, Louisiana.

7. Defendant George H. Lund, III was during the period relevant to this Complaint the ICE New Orleans Field Office Director for Enforcement and Removal Operations. His responsibilities included supervising the administrative segregation and solitary confinement of all detainees within his area of responsibility, reviewing use of force incidents involving ICE officials, and reviewing allegations of misconduct against ICE officials which resulted in injury to ICE detainees. Defendant Lund acted under color of federal law at all times relevant to this Complaint. He is sued in his individual capacity.

8. Defendants John Doe Immigration and Customs Enforcement Agents 1-3 were at all times relevant to this action federal law enforcement officials employment by the United States Department of Homeland Security – Immigration and Customs Enforcement. Upon information and belief, all Defendants are stationed and operating within the geographical area of responsibility of the ICE New Orleans Field Office, Enforcement and Removal Operations. On information and belief, Defendant Does 1-3 regularly conduct business within the New Orleans Field Office region and this District. At all times relevant to this Complaint, Defendant Does 1-3 acted under color of federal law. They are sued in their individual capacities.

9. Defendants John Roe ICE Assistant Field Office Directors 1-2 were at all times relevant to this action federal law enforcement officials employed by ICE. Upon information and believe Defendant Roes 1-2 were delegated the responsibility of reviewing solitary confinement, use of force, and ICE misconduct decisions by Defendant Lund. On information and belief, Defendant Roes 1-2 are stationed at the New Orleans Field Office Headquarters in New Orleans, Louisiana. At all times relevant to this Complaint, Defendant Roes 1-2 acted under color of federal law. They are sued in their individual capacities.

10. Plaintiff is presently unaware of the true names or positions of Defendant Does 1-3 and Defendant Roes 1-2. He therefore sues these individuals using fictitious names. Plaintiff will amend his complaint to state the true name of each Defendant as soon as this information is discovered.

**FACTUAL ALLEGATIONS**

11. On or about September 5, 2013, ICE officials encountered Plaintiff while he was in the custody of local law enforcement officials in Pascagoula, Mississippi.

12. ICE seized custody of Plaintiff, transported him from Pascagoula, and temporarily detained him at an ICE office in or around Gulfport, Mississippi.

13. When he arrived at the ICE Gulfport office and during his custodial interrogation, Plaintiff was shackled at his waist with handcuffs on his wrists and ankles.

14. Defendant John Doe ICE Agent 1 ("Doe 1") commenced a custodial interrogation of Plaintiff.

15. During this interrogation, Defendant Doe 1 claimed to have records showing Plaintiff had previously been deported from the United States.

16. Defendant Doe 1 demanded that Plaintiff sign a form that he represented was a deportation-related document.

17. Believing his only prior immigration history consisted of a voluntary return to Mexico following a brief border stop, Plaintiff refused to sign the document and demanded to speak with an attorney.

18. Defendant Doe 1 denied Plaintiff's demand to speak with an attorney and reiterated that Plaintiff would sign the document placed before him.

19. Defendant Doe 1 threw a pen near the form in front of Plaintiff and told Plaintiff he was going to sign the deportation form whether he wanted to or not.

20. Then Defendant Doe 1 got up and came behind Plaintiff, who was seated and shackled at his hands and ankles.

21. Defendant Doe 1 attempted to force a pen into Plaintiff's hand by using a stress position.

22. When Plaintiff refused to grip the pen and sign the document, Defendant Doe 1 grabbed the back of Plaintiff's head by his hair and slammed it against the surface in front of him several times.

23. Defendant Doe 1 took these actions in retaliation for Plaintiff's First- and Fifth-Amendment protected speech in refusing to sign the documents placed in front of him and in asking for an attorney.

24. This caused Plaintiff's face to bleed profusely, leaving his shirt and the surface in front of Plaintiff covered in blood.

25. Then Defendant Doe 1 maneuvered Plaintiff's body to the floor. Defendant Doe 1 proceeded to kick Plaintiff repeatedly on his sides.

26. Plaintiff suffered blows to his face and body as Defendant Doe 1 kicked him.

27. When Defendant Doe 1 realized the extent of Plaintiff's bleeding, he placed Plaintiff into a holding area.

28. Plaintiff remained in the holding area in agonizing pain for a long period of time until Defendant Doe 2 saw him.

29. When Defendant Doe 2 asked Plaintiff what happened, Plaintiff explained that Defendant Doe 1 had beaten him. Defendant Doe 1 denied this.

30. Defendant Doe 2 took no steps to investigate, document, or report Plaintiff's allegation, despite Plaintiff's manifest injuries and bleeding.

31. Instead, Defendant Does 1, 2, and 3 then worked in tandem to take control of Plaintiff's body and obtain a digital fingerprint.

32. Plaintiff began to cry as this took place.

33. Several minutes later, Plaintiff became dizzy. He began vomiting and convulsing as a result of his injuries.

34. ICE personnel called paramedics to their office, and the paramedics rushed Plaintiff to a hospital.

35. Defendant Does 1-3, acting individually and in concert, prevented Plaintiff from explaining to medical personnel how he had received his injuries, thus interfering with his access to adequate medical care.

36. When Plaintiff was being discharged from the hospital, a nurse asked Plaintiff if he wanted a copy of his discharge forms.

37. Plaintiff responded that he did want the medical record or discharge forms.

38. However, one of the Defendant Does took the forms and then ripped them up.

39. This Defendant Doe said to Plaintiff words to the effect of, "This is how you can get us fired."

40. John Doe ICE Defendants 1-3, working individually and in concert with each other, subsequently conspired to create misleading and untruthful government records in an effort to expedite Plaintiff's removal from the United States, or, in the alternative, to prosecute him federally.

41. John Doe ICE Agents 1-3 created government dockets falsely claiming Plaintiff had offered a government official a bribe, and that "became physically resistive and combative" during their encounter with him.

42. The United States Attorney declined to prosecute Plaintiff for any federal crime.

43. After Plaintiff's release from the hospital in Gulfport, ICE transported him to a temporary ICE detention facility inside the St. Tammany Parish Jail.

44. Once there, one or more of the ICE Defendant Does falsely informed jail and nursing staff that Plaintiff was suicidal.

45. As a consequence, Plaintiff was stripped naked and placed into an isolation cell, adding a degrading and humiliating insult to his severe injuries.

46. Plaintiff had to be hospitalized once again during his detention in St. Tammany because he began vomiting blood and convulsing.

47. Plaintiff was subsequently transferred to a private ICE detention facility in Jena, Louisiana.

48. Based on Defendant ICE agents' false accusation that Plaintiff was suicidal, he was placed in solitary confinement for a period of over five months.

49. Pursuant to ICE Policy 11065.1, Defendant Lund was responsible for supervising and monitoring all detainees in solitary confinement, including Plaintiff.

50. Upon information and belief, Defendant Lund delegated these responsibilities to Defendant Roes 1-2, Assistant Field Office Directors with the New Orleans Field Office.

51. As part of the psychological evaluations he was forced to undergo during his prolonged solitary confinement, Plaintiff related the story of his beating to medical personnel, who were then required by ICE policy to relay it to Defendants Lund and Roes 1-2.

52. Rather than taking any steps to investigate Plaintiff's report of brutal attack by ICE officials, Defendants Lund and Roes 1-2 continued to rubber-stamp his prolonged solitary confinement.

53. Defendants Lund and Roes 1-2 continued Plaintiff's solitary confinement in retaliation for his First Amendment-protected complaints of abuse by ICE agents.

54. Defendants Lund and Roes 1-2 gave Plaintiff no notice of the reasons for his five-month solitary confinement.

55. Defendants Lund and Roes 1-2 gave Plaintiff no meaningful opportunity to contest is five-month solitary confinement.

56. Defendants Lund and Roes 1-2 continued Plaintiff's solitary confinement for five months without legally adequate evidentiary basis.

57. Defendants Lund and Roes 1-2 gave Plaintiff no meaningful periodic review of his five-month solitary confinement.

58. Under these circumstances Plaintiff's five months of solitary confinement at the hands of Defendants Lund and Roes 1-2 constitutes gross physical abusive and/or gross indifference.

### CLAIMS FOR RELIEF

### COUNT ONE
### Fourth Amendment – Excessive Force
### against Defendant John Doe ICE Agent 1

59. All previous paragraphs are incorporated as though fully set forth herein.

60. Plaintiff was a civil, administrative detainee at all times relevant to this Complaint.

61. At all times relevant to this Complaint, Plaintiff had a clearly established right under the Fourth Amendment to the U.S. Constitution to be free from the excessive use of force by ICE law enforcement officers during custodial booking and interrogation.

62. Defendant John Doe ICE Agent 1 slammed Plaintiff's head against a surface multiple times while he was seated and handcuffed at his hands and feet.

63. Defendant John Doe ICE Agent 1 subsequently struck Plaintiff's body with his fists and feet.

64. Plaintiff suffered physical injuries as a direct and sole result of Defendant John Doe ICE Agent 1's physical attack, in the form of bloody cuts to his face and head and apparent internal bleeding. These injuries required multiple trips to the hospital.

65. Defendant John Doe ICE Agent 1's actions clearly exceeded any legitimate need or law enforcement purpose.

66. Defendant John Doe ICE Agent 1's actions in slamming Plaintiff's head against a surface multiple times and subsequently beating Plaintiff while he was handcuffed were objectively unreasonable.

67. As a direct and proximate cause of Defendant John Doe ICE Agent 1's unconstitutional use of force, Plaintiff suffered nominal and monetary damages, including physical and emotional pain and suffering, humiliation, loss of enjoyment, and severe emotional distress.

**COUNT TWO**
**Fourth Amendment – Excessive Force (Failure to Intervene)**
**against Defendants John Doe ICE Agents 2 and 3**

68. All previous paragraphs are incorporated as though fully set forth herein.

69. Upon information and belief, Defendants John Doe ICE Agents 2 and 3 were present at the scene when Defendant Doe 1 employed excessive force against Plaintiff in violation of his clearly established constitutional rights by beating Plaintiff while he was shackled and seated.

70. Defendants John Doe ICE Agents 2 and 3 took no reasonable measures to protect Plaintiff from Defendant Doe 1's use of excessive force, despite having the opportunity to do so.

71. As a direct and proximate cause of Defendants John Doe ICE Agent 2 and 3's failure to intervene and protect Plaintiff against Defendant Doe 1's unconstitutional use of force, Plaintiff suffered nominal and monetary damages, including physical and emotional pain and suffering, humiliation, loss of enjoyment, and severe emotional distress.

### COUNT THREE
### Fifth Amendment – Due Process (Unlawful Solitary Confinement)
### against Defendant Lund and Defendants John Roe AFODs 1-2

72. All previous paragraphs are incorporated as though fully set forth herein.

73. Plaintiff was a civil immigration detainee at all times relevant to this action.

74. Plaintiff had a clearly established right to be free from solitary confinement without legal and evidentiary justification.

75. Plaintiff had a clearly established right to be free from solitary confinement without notice and an opportunity to contest this classification.

76. Plaintiff had a clearly established right to be free from prolonged solitary confinement without neutral, periodic review in which he could meaningfully participate.

77. Defendants Lund and Roes 1-2 were legally responsible for reviewing Plaintiff's solitary confinement.

78. Defendants Lund and Roes 1-2 continued Plaintiff's solitary confinement without legal or evidentiary justification, without affording Plaintiff notice and an opportunity to be heard, and without periodic review in which Plaintiff could meaningfully participate.

79. The actions of Defendants Lund and Roes 1-2 in refusing to ensure Plaintiff's solitary confinement complied with his clearly established Due Process rights constitute gross indifference in violation of the Fifth Amendment to the United States Constitution.

80. As a direct and proximate cause of Defendants Lund and Roes 1-2's actions and omissions that kept Plaintiff in solitary confinement for five months, Plaintiff suffered nominal and monetary damages, including physical and emotional pain and suffering, humiliation, loss of enjoyment, and severe emotional distress.

## COUNT FOUR
### First Amendment – Retaliation for Engaging in Protected Speech
### against all Defendants

81. All previous paragraphs are incorporated as though fully set forth herein.

82. Plaintiff was engaged in constitutionally protected activity when he:

   a. refused to sign documents placed before him in the ICE office;

   b. demanded to speak with an attorney;

   c. reported his beating by Defendant Doe ICE Agent 1 to Defendant Doe ICE Agent 2;

   d. requested a copy of his medical discharge record; and

   e. complained to ICE, jail, and medical officials that he had been attacked by an ICE Agent;

83. All Defendants took actions that will chill a person of ordinary firmness from continuing to engage in constitutionally protected activity, including:

   a. Defendant John Doe ICE Agent 1's brutal attack and beating of Plaintiff;

   b. Defendant John Doe ICE Agent 2's refusal to investigate Plaintiff's complaint that he was beaten by Defendant Doe 1;

   c. Defendant Does 1-3 physical forcing of Plaintiff fingerprint ICE documents;

    d.    Defendant Doe's confiscation and destruction of Plaintiff's medical discharge records;

    e.    Defendants Does 1-3's false accusation that Plaintiff was suicidal, causing him to be stripped naked and placed in solitary confinement in St. Tammany Parish;

    f.    Defendants Lund and Roes 1-2's refusal to investigate Plaintiff's repeated allegations of physical beating by ICE agents and instead, five-month continuation of Plaintiff's solitary confinement in the LaSalle Detention Facility.

84.    All Defendants' actions were substantially motivated by their desire to punish or retaliate against Plaintiff for engaging in constitutionally protected activity.

85.    As a direct and proximate result of Defendants' First Amendment retaliation, Plaintiff suffered nominal and monetary damages, including physical and emotional pain and suffering, humiliation, loss of enjoyment, and severe emotional distress.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully seeks the following relief:

A. A declaration that Defendants violated Plaintiff's Fourth and Fifth Amendment rights;

B. A judgment awarding Plaintiff nominal, compensatory damages, and punitive damages in the amount of $1,000,000;

C. Reasonable attorneys' fees and costs for bad faith Constitutional violations; and

D. Such other relief as the Court may deem just and appropriate.

Dated:  May 8, 2014                                        Respectfully submitted,


  __/s/ R. Andrew Free_____                _____/s/ Paul H. Scott_____
R. ANDREW FREE, TN BPRN 030515              PAUL HUGH SCOTT, LA Bar No. 31961
217 Second Avenue North                                  The Scott Law Firm, LLC
Nashville, TN 37201                                              9270 Siegen Lane, Suite 603
Telephone: (615) 244-2202                                 Baton Rouge, Louisiana 70810
Fax: (615) 244-4345                                             Telephone: (225) 341-2272
Andrew@ImmigrantCivilRights.com              Fax: (888) 606-0123
(*pro hace vice* application forthcoming)        Paul@Pwscottlaw.com
*Trial Counsel for the Plaintiff*                              *Local Counsel for Plaintiff*

Dated:  May 8, 2014                                        Respectfully submitted,


  __/s/ R. Andrew Free_____                _____/s/ Paul H. Scott_____
R. ANDREW FREE, TN BPRN 030515              PAUL HUGH SCOTT, LA Bar No. 31961
217 Second Avenue North                                  The Scott Law Firm, LLC
Nashville, TN 37201                                              9270 Siegen Lane, Suite 603
Telephone: (615) 244-2202                                 Baton Rouge, Louisiana 70810
Fax: (615) 244-4345                                             Telephone: (225) 341-2272
Andrew@ImmigrantCivilRights.com              Fax: (888) 606-0123
(*pro hace vice* application forthcoming)        Paul@Pwscottlaw.com
*Trial Counsel for the Plaintiff*                              *Local Counsel for Plaintiff*